## IN THE UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF VIRGINIA
### DANVILLE DIVISION

JOYCE G. SLOAN,                          )
                                         )
       Plaintiff,                    )
                                         )
v.                                       )          Case No.  4:18-cv-00049
                                         )
JULIE  AYERS NORMAN                      )
                                         )
       Defendant.                    )

### PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

For her Memorandum in Opposition to the Defendant's Motion for Summary Judgment, the plaintiff states as follows:

### Introduction

Plaintiff Joyce Sloan suffered catastrophic injuries arising from a motor vehicle accident on June 9, 2017 at about 5:25 p.m.

Ms. Sloan alleges she was southbound on US 220, about 1/10 of a mile north of the intersection with Route 688 in Henry County, Virginia.  She was in the left travel lane when she was struck from behind.  The force of the collision sent her to the right shoulder of the road where she lost control in the loose gravel and came back into and struck the car of the defendant.

Ms. Sloan testified she could not identify the vehicle that struck her from behind. That said, there were only two vehicles in her vicinity, a tractor trailer driven by  Michael Deaton, who signed a declaration attached to the defendant's motion for summary judgment.  He indicated he was 200 to 300 feet behind the parties and what he saw was only that part where the Cherokee ran off the road to the right, over-correct, and come

LAW OFFICES OF
CRANDALL & KATT
366 ELM AVENUE, S.W.
ROANOKE, VIRGINIA 24016

back onto the road where it struck the Saturn Outlook in the left lane. His declaration does not address whether or not he saw what, if anything, precipitated the plaintiff's vehicle going off the road.

Further, his declaration indicates that he saw the Saturn Outlook (driven by the defendant), and the Jeep Cherokee in adjacent lanes.

The defendant denies striking or hitting the plaintiff's vehicle prior to it going to the right shoulder of the roadway.

For the reasons set forth herein, the plaintiff contends there is a genuine issue of material fact for a jury to decide.

<u>Standard of Review for Summary Judgment</u>

In the Fourth Circuit, summary judgment "is appropriate only where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See also Reyazuddin v. Montgomery Cty., Maryland*, 789 F.3d 407, 413 (4th Cir. 2015). The trial court must assess whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). Thus, "[s]ummary judgment is appropriate only if taking the evidence and <u>all reasonable inferences</u> drawn therefrom in the light most favorable to the nonmoving party, 'no material facts are disputed and the moving party is entitled to judgment as a matter of law (emphasis mine). *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (*en banc*) quoting *Ausherman v. Bank of Am. Corp.*, 532 F.3d 896,899 (4th Cir. 2003)). This Court must view all evidence in the light most favorable to plaintiff Joyce Sloan as the non-moving party, with all reasonable inferences drawn in her favor.

LAW OFFICES OF
CRANDALL & KATT
366 ELM AVENUE, S.W.
ROANOKE, VIRGINIA 24016

*See Reyazuddin, supra*, 789 F.3d at 413 (citations omitted). In addition, the Court "cannot weigh the evidence or make credibility determinations." *Id.* (citations omitted).

<u>Argument</u>

The critical question in the instant case is whether the facts alleged are capable of an inference in favor of the plaintiff that the defendant was the most likely vehicle to strike the plaintiff and send her vehicle to the right shoulder of the roadway.

It would not seem to be unusual for a vehicle struck in the rear or rear-side to not know exactly what/which car struck them. What is true by inference, based on the defendant's deposition testimony and the declaration of Mr. Deaton, is that the defendant was the only vehicle in close proximity to the plaintiff when the plaintiff alleges she was struck and pushed to the right shoulder.

The defendant's own testimony is that she intended to change lanes from the left to right, and signaled to move over (Norman, 7-12). Ms. Norman indicated she did not know what car sounded its horn (Norman, 8-8), but she did see Ms. Sloan's vehicle come up on her right hand side (Norman, 8-12). She further stated that based on her driving experience she would assume that Ms. Sloan's car was the one who beeped her horn (Norman, 11-1).

So we are left with the facts that Ms. Sloan alleges she was struck from behind or from the rear side by another vehicle. The only vehicle, by inference, in position to do this would be the defendant's. There is a dispute of fact as to whether or not the two vehicles made physical contact before Ms. Sloan's vehicle went over to the right shoulder. That would seem to be a fact for a jury to decide. At this stage of the proceeding, Ms. Sloan is entitled to have every inference decided in her favor.

LAW OFFICES OF
CRANDALL & KATT
366 ELM AVENUE, S.W.
ROANOKE, VIRGINIA 24016

<u>Conclusion</u>

While the plaintiff cannot from her own recollection, state whether Ms. Norman's vehicle was the one that struck her from behind, there are sufficient facts from which a fact-finder could reasonably conclude that Ms. Norman's vehicle was in close proximity to the plaintiff, that she intended to move to the right, signaled to move to the right, and that a vehicle sounded its horn. That Ms. Sloan's vehicle was, in the experience of Ms. Norman, most likely the vehicle that sounded its horn. There are enough factual inferences that the Court should allow a jury to decide the factual issue of whether or not the two vehicles made physical contact prior to the plaintiff's vehicle going over to the right shoulder of the road.

For the reasons set forth herein, plaintiff Joyce Sloan respectfully requests the Court deny the defendant's Motion for Summary Judgment, and permit her to present her case to a jury.

Respectfully submitted,

Joyce Sloan

<u>/s/ John F. Pyle</u>
Counsel

John F. Pyle (VSB 27696)
Crandall & Katt
366 Elm Avenue, SW
Roanoke, Virginia 24016
Telephone: 540-342-2000
Facsimile: 540-345-
jpyle@crandalllaw.com

Counsel for plaintiff.

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and complete copy of the foregoing Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment was delivered to the Clerk of Court via the Court's CM/ECF system, which will provide a Notice of Electronic Filing (NEF) to counsel of record, this 15th day of April, 2019.

/s/John F. Pyle

# JOYCE G. SLOAN

*vs*

# JULIE AYERS NORMAN

Deposition of

*Joyce Sloan*

*February 26, 2019*



**Hart**
**REPORTING AND VIDEOCONFERENCING**
*Advancing with Technology and Excellence*

*Statewide Coverage in Virginia*     *National and International Scheduling*

590 Neff Avenue, Suite 2000     1020 Ednam Center, Suite 002     205 34th Street, #1601
Harrisonburg, VA  22801     Charlottesville, VA  22903     Virginia Beach, VA  23452
(540) 801-0288     (434) 296-3111     (757) 227-4241

1   VIRGINIA:

2              IN THE UNITED STATES DISTRICT COURT
               WESTERN DISTRICT OF VIRGINIA
3                  DANVILLE DIVISION

4   _____

5   JOYCE G. SLOAN,

6                      Plaintiff,
                                              Case No.:
7              -vs-                           CV-00049

8   JULIE AYERS NORMAN,

9                      Defendants.

10  _____

11                    **ORIGINAL**

12

13          DEPOSITION OF JOYCE GREER SLOAN

14

15                  February 26, 2019
                    10:13 a.m.
16                  Danville, Virginia

17

18

19

20

21

22

23

24

25          Reported by:  WENDY J. PULLIUM, RPR

*Hart*
www.hartreporting.com
scheduling@hartreporting.com
Toll Free
(877) 907-4278
Case 4:18-cv-00049-JLK-RSB   Document 9-1   Filed 04/01/19   Page 2 of 23   Pageid#: 69

Deposition of Joyce Sloan
February 26, 2019

Page 2

1              It is stipulated by and between the Parties and

2    their respective attorneys that the deposition of Joyce

3    Greer Sloan may be taken and transcribed by and before

4    Wendy J. Pullium, Court Reporter and Notary Public in and

5    for the Commonwealth of Virginia at Large, pursuant to the

6    Federal Rules of Civil Procedure, and by Notice to take

7    depositions; commencing on February 26, 2019, 10:13 a.m.,

8    at Danville Juvenile & Domestic Relations Court, 401

9    Patton Street, Danville, Virginia 24543-3300.

10

11   Appearing on Behalf of the Plaintiff:

12   CRANDALL & KATT, PLC
     BY:  John F. Pyle, Esquire
13   366 Elm Avenue, S.W.
     Roanoke, Virginia  24016
14

15   Appearing on Behalf of the Defendant:

16   GLENN ROBINSON CATHEY MEMMER & SKAFF, PLC
     BY:  Johneal M. White, Esquire
17   400 Salem Avenue S.W., Suite 100
     Roanoke, Virginia  24016
18

19   ALSO PRESENT:  Julie Ayers Norman

20

21

22

23

24

25

*Hart*                  www.hartreporting.com                    Toll Free
                  scheduling@hartreporting.com          (877) 907-4278
Case 4:18-cv-00049-JLK-RSB   Document 9-1   Filed 04/01/19   Page 3 of 23   Pageid#: 70

Deposition of Joyce Sloan
February 26, 2019

Page 15

```
 1    A.    Very much so.

 2    Q.    What date did it happen on?

 3    A.    June the 9th, 2017.

 4    Q.    What time of day did it happen?

 5    A.    5:30ish maybe.  5:00 to 6:00 maybe.

 6    Q.    In the evening?

 7    A.    Yes.

 8    Q.    Was it still light outside?

 9    A.    Yes.

10    Q.    What were the weather conditions like?

11    A.    Very good.

12    Q.    Clear?

13    A.    Yes.

14    Q.    Roads were dry?

15    A.    Yes.

16    Q.    It wasn't raining?

17    A.    No.

18    Q.    Where were you coming from?

19    A.    Home.

20    Q.    In Rocky Mount?

21    A.    Yes, ma'am.

22    Q.    Where were you headed?

23    A.    To my mother's for a couple of weeks.

24    Q.    Where does she live?

25    A.    King, North Carolina.
```

Hart

www.hartreporting.com
scheduling@hartreporting.com

Toll Free
(877) 907-4278

Case 4:18-cv-00049-JLK-RSB   Document 9-1   Filed 04/01/19   Page 4 of 23   Pageid#: 71

Deposition of Joyce Sloan
February 26, 2019

Page 16

1       Q.     King?

2       A.     Yes.

3       Q.     And what's her name?

4       A.     Well, she passed while I was in the hospital.

5              Mary Frances Fields.

6       Q.     What kind of vehicle were you driving at the

7   time of the accident?

8       A.     '99 Jeep.

9       Q.     What color was it?

10      A.     What -- excuse me?

11      Q.     What color was it?

12      A.     White.

13      Q.     How long had you had that Jeep?

14      A.     That was -- I am going to speculate eight

15  years.

16      Q.     So you bought it used?

17      A.     My daughter gave me that Jeep.  She bought a

18  new car, and she gave me that Jeep.

19      Q.     And it was a Jeep Cherokee?

20      A.     Yes, Laredo.

21      Q.     What road did the accident happen on?

22      A.     It was Ridgeway, 220 Business.

23      Q.     And about what time had you left your house?

24      A.     Well, from the time it took me to get from my

25  house to there.  I stopped and got gas.

Hart
www.hartreporting.com
scheduling@hartreporting.com
Toll Free
(877) 907-4278
Case 4:18-cv-00049-JLK-RSB   Document 9-1   Filed 04/01/19   Page 5 of 23   Pageid#: 72

Deposition of Joyce Sloan
February 26, 2019

Page 17

1        Q.     Do you know where you stopped and got gas?

2        A.     Wilco in Bassett Forks.

3        Q.     And no one else was in your vehicle with you

4    at the time?

5        A.     No.

6               Excuse me, I say Bassett Forks, and it may

7    not have been.  I want to think it was, but I'm not

8    positive about that.

9        Q.     But you feel confident you did stop to get

10   gas?

11       A.     I did stop and get gas.

12       Q.     Are there any landmarks near where the

13   accident happened?

14       A.     Well, I know the area very good.  I have

15   driven it most of my life.  As a matter of fact, we have a

16   place in Walnut Cove.  My daughter's lived there since she

17   got out of college.  Well, lived in the North Carolina

18   area.

19

20               MR. PYLE:  The question was:  Do you know of

21          any landmarks near the accident?

22               THE WITNESS:  Do I know of any landmarks?

23          Clarence's Steakhouse.

24

25

Hart
www.hartreporting.com
scheduling@hartreporting.com
Toll Free
(877) 907-4278
Case 4:18-cv-00049-JLK-RSB  Document 9-1  Filed 04/01/19  Page 6 of 23  Pageid#: 73

Deposition of Joyce Sloan
February 26, 2019

Page 18

1    BY MS. WHITE:   (Continuing)

2           Q.    Okay.

3           A.    That's before the accident.

4           Q.    So you -- you had passed Clarence's --

5           A.    Yes.

6           Q.    -- Steakhouse?

7           A.    Yes, ma'am.

8           Q.    How far is Clarence's Steakhouse from where

9    the accident happened?

10          A.    I will have to say a few miles.  I'm not

11   positive.

12          Q.    And the section of 220 where the accident

13   happened is two lanes headed southbound; is that correct?

14          A.    Two lanes, but, you know, there are extra

15   lanes for turning and stuff like that.

16          Q.    Okay.  Well, how many lanes were there in the

17   area where the accident happened?

18          A.    Two.

19          Q.    And do you recall what lane you were in just

20   prior to the accident happening?

21          A.    The left.

22          Q.    How long had you been in the left lane?

23          A.    I'm going to speculate.  The tractor-trailers

24   that I passed -- 10 to 15 minutes.  I'm speculating

25   because I'm not positive about the time.  They were in

*Hart*                    www.hartreporting.com                    Toll Free
                          scheduling@hartreporting.com          (877) 907-4278
Case 4:18-cv-00049-JLK-RSB   Document 9-1   Filed 04/01/19   Page 7 of 23   Pageid#: 74

Deposition of Joyce Sloan
February 26, 2019

Page 19

1    different areas.

2         Q.    Okay.  So you had passed some

3    tractor-trailers --

4         A.    (Witness nods head.)

5         Q.    -- on 220 before the accident happened?

6         A.    Yes.

7         Q.    How long before the accident happened did you

8    pass those tractor-trailers?

9         A.    I don't know.

10        Q.    Was one of those tractor-trailers hauling

11   cars?

12        A.    I don't know.  I -- I just don't know.

13        Q.    And since you passed those tractor-trailers,

14   you were in the left lane the entire time?

15        A.    I was.

16        Q.    Okay.  Never got back over into the right

17   lane prior to the accident --

18        A.    It wasn't --

19        Q.    Sorry, ma'am, you just have to wait for me to

20   finish, so --

21        A.    Oh, I'm sorry.

22        Q.    Do you ever get back into the right lane

23   after passing the tractor-trailers before the accident

24   happened?

25        A.    No, because it wasn't clear enough.  I always

*Hart*

www.hartreporting.com
scheduling@hartreporting.com

Toll Free
(877) 907-4278

Case 4:18-cv-00049-JLK-RSB   Document 9-1   Filed 04/01/19   Page 8 of 23   Pageid#: 75

Deposition of Joyce Sloan
February 26, 2019

Page 20

1    wait until it's clear.

2         Q.    Okay.  So there was traffic in the right

3    lane?

4         A.    There was traffic everywhere.  That is a very

5    bad area for traffic.

6         Q.    So was traffic heavy that day?

7         A.    Heavy.  Work traffic.

8         Q.    What was the speed limit in that area?

9         A.    It's 35 in some areas, 45 in some areas, and

10   I'm speculating I was probably getting close to the 55.

11   And I don't know that I had gotten to the 55 speed limit

12   yet or not.  But I know you start out 35.  There's a

13   school in that area.  Then you go to 45, and then it goes

14   into 55 the further on you get down the road.

15        Q.    Do you know how fast you were going right

16   before the accident happened?

17        A.    I would say I was going probably at the most

18   45.

19        Q.    And why do you say that?

20        A.    Because it is so congested that that road

21   terrifies me.  The tractor-trailers terrify me.  As a

22   matter of fact, I can't see good over them, and I can't --

23   the diesel smell from them, that's why I always -- when I

24   know there are stoplights, I always go around the

25   tractor-trailers and try to stay in that lane until I can

Hart
www.hartreporting.com
scheduling@hartreporting.com
Toll Free
(877) 907-4278
Case 4:18-cv-00049-JLK-RSB   Document 9-1   Filed 04/01/19   Page 9 of 23   Pageid#: 76

Deposition of Joyce Sloan
February 26, 2019

Page 21

1    get back in front of them.

2                So that's why I passed the tractor-trailers

3    and try -- and then when I'm clear to get back over in the

4    lane, the right lane, which I normally drive in, that's

5    when I get in the right lane.  And it wasn't clear for me

6    to get in the right lane.

7          Q.    So do you know -- do you know for a fact you

8    were going about 45?

9          A.    Not for a fact, because I wasn't looking at

10   the odometer (sic).

11         Q.    Okay.  So fair to say --

12         A.    That's what I normally drive in that area

13   depending on where I am and what I know the speed limit is

14   without looking at signs.

15         Q.    Okay.  So fair to say you don't know what

16   your speed was prior to the accident?

17         A.    I don't -- I cannot say positive.

18         Q.    What do you recall about how the accident

19   happened?

20         A.    I recall driving down the road thinking it

21   was such a beautiful day and bam.  And then -- do you want

22   me to go on?

23         Q.    Yeah.

24         A.    Okay.  And bam.  And I am going over into the

25   right.  I am terrified that there may be vehicles there,

*Hart*
www.hartreporting.com
scheduling@hartreporting.com
Toll Free
(877) 907-4278
Case 4:18-cv-00049-JLK-RSB   Document 9-1   Filed 04/01/19   Page 10 of 23   Pageid#: 77

Deposition of Joyce Sloan
February 26, 2019

Page 22

```
1    because I keep my eyes on the road.  Not knowing, I go

2    over the right, hit some gravels.  I get prepared.  I said

3    I've got to keep this car in the road.  I get prepared to

4    keep my car in the road, and it is going every which way,

5    and then I am out.

6         Q.   Okay.

7         A.   There was no keeping my car in the road.

8         Q.   Okay.  So you're in the left lane and bam?

9         A.   Right.

10        Q.   What is bam?

11        A.   Bam is something hit me.

12        Q.   Okay.  Do you know what that was?

13        A.   I'm assuming a car.

14        Q.   Okay.  Do you have any actual memory of what

15   hit you?

16        A.   I have a memory of the hit.  I had -- it was

17   unforeseen.

18        Q.   What part of your vehicle was hit?

19        A.   The right side rear.

20        Q.   So the passenger's side rear was hit?

21        A.   Side rear, yes.  Not in the tail end, the

22   side rear.

23        Q.   Okay.  On the passenger's side in the rear --

24        A.   Right.

25        Q.   -- sort of quarter panel?
```

Hart
www.hartreporting.com
scheduling@hartreporting.com
Toll Free
(877) 907-4278
Case 4:18-cv-00049-JLK-RSB   Document 9-1   Filed 04/01/19   Page 11 of 23   Pageid#: 78

Deposition of Joyce Sloan
February 26, 2019

Page 23

1      A.    Sort of from the back door back.

2      Q.    Okay.  But you don't know what hit you?

3      A.    No.

4      Q.    You --

5      A.    Because it was unforeseen.  There was no

6   accident scene.

7            And I watch all mirrors, so I have no idea

8   where it came from.

9      Q.    Okay.  So you did not observe Ms. Norman's

10  vehicle hit you?

11     A.    Absolutely I did not observe any vehicle

12  about to hit me or near me that I thought was going --

13  there was going to be an accident.

14     Q.    When you were driving in the left lane, was

15  your attention focused forward at that time?

16     A.    My attention is always focused on the road

17  and all the surrounding vehicles.

18     Q.    Okay.  Where do you think your attention --

19  the -- most of your attention was focused?

20     A.    After I was hit?

21     Q.    No, before you were hit as you're --

22     A.    Before I was hit?

23     Q.    As you were driving down the road.

24     A.    On the road.

25     Q.    Okay.  In front of you?

www.hartreporting.com
scheduling@hartreporting.com
Toll Free
(877) 907-4278
Case 4:18-cv-00049-JLK-RSB   Document 9-1   Filed 04/01/19   Page 12 of 23   Pageid#: 79

Deposition of Joyce Sloan
February 26, 2019

Page 24

1        A.      On all the vehicles.  In front of me, beside

2    me and behind me.

3        Q.      Was your next move, were you wanting to get

4    over into the right lane if possible?

5        A.      I knew when I was going to be able to get

6    into the right lane as, too, there was a tractor-trailer

7    that -- if you have video of the stoplights, you'll

8    probably have video of what was at the stoplights because

9    they catch up with you, and that was the last stoplight

10   before the accident.

11               So the tractor-trailers will catch up with

12   you when you think you're going to get to go around them

13   sooner.  And I am terrified of tractor-trailers, which

14   I'm -- I have driven 50-some years and never had an

15   accident in my life, so therefore, like I say, I want to

16   make sure it's clear before I'm going to try to move

17   around, and especially, there again, with the traffic.

18       Q.      Was your next move, were you wanting to get

19   over into --

20       A.      Right.

21       Q.      -- the right lane?

22       A.      Yes, but not before my time.

23       Q.      Okay.  Did you ever see Ms. Norman's vehicle

24   prior to the accident?

25       A.      No, ma'am.

*Hart*                www.hartreporting.com                Toll Free
                    scheduling@hartreporting.com        (877) 907-4278
Case 4:18-cv-00049-JLK-RSB   Document 9-1   Filed 04/01/19   Page 13 of 23   Pageid#: 80

Deposition of Joyce Sloan
February 26, 2019

Page 25

1        Q.    Was it ever in front of you that you recall?

2        A.    No, ma'am.

3        Q.    Do you ever recall looking in your mirrors

4   and seeing her behind you?

5        A.    No, ma'am.

6        Q.    So after the bam and the impact, what

7   happened to your vehicle then?

8        A.    Well, I black -- evidently I got knocked out.

9   I woke up, and I was in a ditch, and there was a guy at my

10  window.  And I -- well, actually I woke up.  I see my cell

11  phone in the charger.

12            You asked what happened after?  That was the

13  question?

14       Q.    After the bam.

15       A.    After the bam?

16            Well, after the bam I woke up.

17       Q.    Okay.  So do you have any memory from --

18  between the bam and waking up?

19       A.    Well, I have memory of trying to keep the car

20  in the road --

21       Q.    Okay.

22       A.    -- after the bam.

23       Q.    Okay.  So then after the bam where was your

24  vehicle in the road?

25       A.    Everywhere.

Hart
www.hartreporting.com
scheduling@hartreporting.com
Toll Free
(877) 907-4278
Case 4:18-cv-00049-JLK-RSB   Document 9-1   Filed 04/01/19   Page 14 of 23   Pageid#: 81

Page 26

1          Q.     Okay.  Did it go off the right side of the

2    road?

3          A.     It went off the right side just in the

4    gravels.

5          Q.     I'll show you what we'll mark as Exhibit 1 to

6    your deposition.  Is that -- were those marks, do you

7    think, made by your vehicle going off the right side of

8    the road?

9          A.     I wouldn't think so, because I kind of just

10   went off the road.  I -- there was not braking.  Just -- I

11   don't even see any gravels.  I thought I heard gravels.

12         Q.     Well, if you look in this grass patch there,

13   that may be a tire mark.

14         A.     I don't think there were any tire marks as

15   far as me going off the road.

16         Q.     So you don't recall hitting your brakes at

17   all?

18         A.     No.  I recall just trying to keep my car in

19   the road.  I recall there being so many cars, how many is

20   going to get in this accident, that I was totally not

21   expecting.

22         Q.     And you have been making some motions with

23   your hands?

24         A.     Yes.

25         Q.     Is that -- would you -- is that fair to

Hart                    www.hartreporting.com              Toll Free
                   scheduling@hartreporting.com        (877) 907-4278
Case 4:18-cv-00049-JLK-RSB   Document 9-1   Filed 04/01/19   Page 15 of 23   Pageid#: 82

Deposition of Joyce Sloan
February 26, 2019

Page 27

1    describe that as a fishtailing motion?

2         A.    I just sometimes talk with my hands.

3         Q.    Okay.  Is that the motion your vehicle was

4    making, though?

5         A.    Yeah.  Oh, yes.

6         Q.    Sort of swerving back and forth?

7         A.    Yes.  I -- I get both hands on the steering

8    wheel to brace myself, because I was trying to keep it in

9    the road.  So I was just concentrating on the road and my

10   car and staying in the road.  But there again, I said, God

11   with me, I can't stay in the road.  And then I blacked

12   out --

13        Q.    Okay.

14        A.    -- or whatever happened to me.

15        Q.    All right.  So -- but is that the -- is that

16   the motion your vehicle was making, was sort of swerving

17   back and forth?

18        A.    Not a lot.  I just couldn't handle it.

19        Q.    Okay.  Small -- small movement back and

20   forth?

21        A.    I knew there was nothing I could do.

22        Q.    Okay.  Was it a small movement back and

23   forth?

24        A.    I don't know.

25        Q.    Okay.  Do you know the term "fishtailing"?

Hart
www.hartreporting.com
scheduling@hartreporting.com
Toll Free
(877) 907-4278
Case 4:18-cv-00049-JLK-RSB   Document 9-1   Filed 04/01/19   Page 16 of 23   Pageid#: 83

Deposition of Joyce Sloan
February 26, 2019

Page 28

1        A.      I've heard it.

2        Q.      Like a fish's tail going back and forth?

3        A.      I have heard it --

4        Q.      Okay.

5        A.      -- but I really don't know what it is with a

6    car.

7        Q.      Okay.  You've never -- that's never happened

8    to you before?

9        A.      Well, I don't know, because I don't know what

10   it means with a car.  I should, but I don't.

11       Q.      And so do you -- after going off the right

12   side of the road, do you have any memory after that?

13       A.      After going out -- off of the right side of

14   the road, that's the memory I just explained to you.

15       Q.      Yes.  Do you -- and do you remember anything

16   after that point?

17       A.      Yes.

18       Q.      What do you remember after that point?

19       A.      I wake up from whatever happened to me.  I

20   come to.  You want me to continue?

21       Q.      So -- we'll get there in a second.

22       A.      Okay.

23       Q.      So after getting -- do you remember getting

24   back onto the road -- having your entire vehicle back on

25   the road?

Hart

www.hartreporting.com
scheduling@hartreporting.com

Toll Free
(877) 907-4278

Case 4:18-cv-00049-JLK-RSB   Document 9-1   Filed 04/01/19   Page 17 of 23   Pageid#: 84

Deposition of Joyce Sloan
February 26, 2019

Page 29

1          A.     Once it landed in the culvert or wherever it

2      landed?

3          Q.     Okay.  So I think you testified correctly,

4      correct, that your vehicle went off on the right side of

5      the road into the gravel?

6          A.     Right.

7          Q.     Do you --

8          A.     And I'm trying to keep it in the road.

9          Q.     Okay.  Did you ever get back fully in the

10     road?

11         A.     I was out of the gravel.  I was doing this,

12     and then I am out.

13         Q.     Okay.

14         A.     Then I wake up in a culvert.

15         Q.     Okay.  So you do remember getting out of the

16     gravel?

17         A.     Yes.

18         Q.     Okay.

19         A.     I don't mean to -- I'm just trying to talk

20     loud.  I don't mean to sound ugly.

21         Q.     And then your vehicle ended up -- no, it's

22     fine, I do this, it's my job -- on the left side of the

23     road?

24         A.     What about the left?

25         Q.     Is that where your vehicle ended up, on the

𝓗art                    www.hartreporting.com              Toll Free
                   scheduling@hartreporting.com        (877) 907-4278
Case 4:18-cv-00049-JLK-RSB   Document 9-1   Filed 04/01/19   Page 18 of 23   Pageid#: 85

Deposition of Joyce Sloan
February 26, 2019

Page 30

1   left side of the road?

2        A.    The best of my knowledge.

3        Q.    Was it -- did your vehicle end up in the

4   median?

5        A.    They tell me it's the median.  I don't know.

6        Q.    Who told you that?

7        A.    Everybody that's told me, your car was --

8   your car rolled twice and you was here.  And I want to say

9   they said median.

10       Q.    Do you have a memory of your car rolling?

11       A.    No.  Thank God.  The Lord took that away.

12       Q.    Who has told you that your car rolled?

13       A.    The -- anybody that was -- the people that

14   was there, the -- my husband that talked to the people

15   that was there.

16       Q.    So your husband has told you that your

17   vehicle rolled?

18       A.    Yes.

19       Q.    And is that based upon what people at the

20   scene told him?

21       A.    Well, the state trooper told him.

22       Q.    Okay.

23       A.    Plus he knows cars very well, so he knew.

24       Q.    Anyone else whose name you know who has told

25   you that your vehicle rolled?

Hart
www.hartreporting.com
scheduling@hartreporting.com
Toll Free
(877) 907-4278
Case 4:18-cv-00049-JLK-RSB   Document 9-1   Filed 04/01/19   Page 19 of 23   Pageid#: 86

Deposition of Joyce Sloan
February 26, 2019

Page 31

```
1          A.     My son also talked to the police officer.  As
2   a matter of fact, I think they said it rolled twice.
3          Q.     And is that information your son got from the
4   trooper?
5          A.     Yes.  The best of my knowledge.
6          Q.     Anyone else you know who has said that your
7   car rolled?
8          A.     Not that I can recall.
9          Q.     So you remember waking up?
10         A.     Yes.
11         Q.     And I think you were starting to tell me
12  about seeing your cell phone?
13         A.     Yes.
14         Q.     And did you make a phone call?
15         A.     Yes.
16         Q.     Who did you call?
17         A.     My husband.
18         Q.     What was his phone number?
19         A.     I have it in my -- I just have a flip phone.
20  I have it in there.  I was able to pull up his name.  I
21  just pushed that little button, and it pulls up his name.
22  And I pushed send.  I keep his number there.
23         Q.     Who was your carrier at the time?
24         A.     I'm not positive.  I would say Verizon, but
25  I'm not positive.
```

Hart

www.hartreporting.com
scheduling@hartreporting.com

Toll Free
(877) 907-4278

Case 4:18-cv-00049-JLK-RSB   Document 9-1   Filed 04/01/19   Page 20 of 23   Pageid#: 87

Page 32

```
 1          Q.    Do you know what your cell phone number was

 2    at the time?

 3          ███████████████████

      ███████████████████████  --

 5          A.    No.  ██████████.

 6          Q.    ████.

 7                And is that a ████ number?

 8          A.    Yes, ma'am.

 9          Q.    Is the account under your name?

10          A.    No.

11          Q.    Under your husband's name?

12          A.    Yes.

13          Q.    Prior to the accident had you been on your

14    phone at all?

15          A.    When I was getting gas my daughter had text

16    me to see if I was okay just as in traveling to Carolina,

17    because she lives there.  I text her back at the gas --

18    well, after I pumped gas, to pay.  That's it.

19                I do not use a cell phone and drive.  I don't

20    think anyone should.

21          Q.    Do you know --

22          A.    It should be against the law.

23          Q.    Do you know how long before the accident that

24    was that you had that text exchange?

25          A.    I don't -- I don't know.
```

*Hart*

Deposition of Joyce Sloan
February 26, 2019

Page 33

1          She was worried about it, so she checked it

2     to make sure it wasn't while I was on the road.

3          Q.    When was that?

4          A.    Whenever it was all going on.  I guess when I

5     was in the hospital.  That's what she told me.  I -- I

6     can't say that for sure.  She told me that.

7          Q.    Do you still have that same phone?

8          A.    Yeah.

9          Q.    Do you have that --

10          A.    I think it's -- I'm not sure if I have the

11     same phone or not.  I have the same phone number.

12          Q.    Do you still have that text exchange?

13          A.    I can't say.

14          Q.    What kind of phone is it?

15          A.    It's just a Verizon flip phone.  I'm not a

16     computer person.

17          Q.    What did you tell your husband when you

18     called him?

19          A.    Honey, I am in -- I have been in a bad

20     accident in Ridgeway.  And then I dropped the phone.

21          Q.    Did you tell him how the accident happened?

22          A.    No.  I couldn't.

23          Q.    Why is that?

24          A.    Well, for one, I didn't know how it happened,

25     and for two, I guess I must have went out again.

*Hart*
www.hartreporting.com
scheduling@hartreporting.com
Toll Free
(877) 907-4278
Case 4:18-cv-00049-JLK-RSB   Document 9-1   Filed 04/01/19   Page 22 of 23   Pageid#: 89

Deposition of Joyce Sloan
February 26, 2019

Page 34

1        Q.      Did he come to the scene?

2        A.      Yes.

3        Q.      Did you have just that one conversation with

4    him, or did you call him back?

5        A.      No, I did not call him back.  As a matter of

6    fact, the man told me to get off the phone.

7        Q.      Someone at the scene told you?

8        A.      Yes.  It was a person who said he was an EMT.

9        Q.      Do you know where he was an EMT with?

10       A.      He was from out of state.  He just saw it and

11   stopped.  Was telling me what to do.

12       Q.      Did you talk to the state trooper at the

13   scene?

14       A.      Not to my knowledge.  I did never see a state

15   trooper.

16       Q.      Have you ever spoken to a state trooper?

17       A.      No.

18       Q.      So do you -- you don't recall telling the

19   state trooper that you didn't remember what happened in

20   the accident?

21       A.      No.

22       Q.      Do you know if -- apparently, your husband

23   and your son have talked to the state trooper?

24       A.      I know my son did.  I think my husband did,

25   apparently.

Hart
www.hartreporting.com                    Toll Free
scheduling@hartreporting.com       (877) 907-4278
Case 4:18-cv-00049-JLK-RSB   Document 9-1   Filed 04/01/19   Page 23 of 23   Pageid#: 90

# JOYCE G. SLOAN

*vs*

# JULIE AYERS NORMAN

---

Deposition of

*Julie Norman*

*February 26, 2019*

---



Statewide Coverage in Virginia          National and International Scheduling

590 Neff Avenue, Suite 2000          1020 Ednam Center, Suite 002          205 34th Street, #1601
Harrisonburg, VA  22801          Charlottesville, VA  22903          Virginia Beach, VA  23452
(540) 801-0288          (434) 296-3111          (757) 227-4241

```
 1   VIRGINIA:

 2              IN THE UNITED STATES DISTRICT COURT
                  WESTERN DISTRICT OF VIRGINIA
 3                     DANVILLE DIVISION

 4   _____

 5   JOYCE G. SLOAN,

 6                    Plaintiff,
                                          Case No.:
 7         -vs-                           CV-00049

 8   JULIE AYERS NORMAN,

 9                    Defendants.

10   _____

11

12            DEPOSITION OF JULIE AYERS NORMAN

13

14                 February 26, 2019
                      11:28 a.m.
15                 Danville, Virginia

16

17

18

19

20

21

22

23

24

25        Reported by:  WENDY J. PULLIUM, RPR
```

*Hart*
www.hartreporting.com                          Toll Free
scheduling@hartreporting.com            (877) 907-4278
Case 4:18-cv-00049-JLK-RSB   Document 9-2   Filed 04/01/19   Page 2 of 17   Pageid#: 92

Page 2

1          It is stipulated by and between the Parties and

2     their respective attorneys that the deposition of Julie

3     Ayers Norman may be taken and transcribed by and before

4     Wendy J. Pullium, Court Reporter and Notary Public in and

5     for the Commonwealth of Virginia at Large, pursuant to the

6     Federal Rules of Civil Procedure, and by Notice to take

7     depositions; commencing on February 26, 2019, 11:28 a.m.,

8     at Danville Juvenile & Domestic Relations Court, 401

9     Patton Street, Danville, Virginia 24543-3300.

10

11    Appearing on Behalf of the Plaintiff:

12    CRANDALL & KATT, PLC
      BY:   John F. Pyle, Esquire
13    366 Elm Avenue, S.W.
      Roanoke, Virginia  24016
14

15    Appearing on Behalf of the Defendant:

16    GLENN ROBINSON CATHEY MEMMER & SKAFF, PLC
      BY:   Johneal M. White, Esquire
17    400 Salem Avenue S.W., Suite 100
      Roanoke, Virginia  24016
18

19    ALSO PRESENT:   Joyce Greer Sloan

20

21

22

23

24

25

Hart
www.hartreporting.com
scheduling@hartreporting.com
Toll Free
(877) 907-4278
Case 4:18-cv-00049-JLK-RSB   Document 9-2   Filed 04/01/19   Page 3 of 17   Pageid#: 93

Page 7

```
 1         Q.    Okay.  Do you agree that this accident
 2   occurred on Route 220 about a tenth of a mile north of the
 3   intersection with Route 688 in Henry County?
 4         A.    Yes, sir.
 5         Q.    And were these the southbound lanes?
 6         A.    Yes, sir.
 7         Q.    And those are two adjacent southbound lanes?
 8         A.    Yes, sir.
 9         Q.    Just prior to the accident, which lane were
10   you in?
11         A.    The left-hand lane.
12         Q.    Did there come a point when -- prior to the
13   accident that you intended to change to the right lane?
14         A.    Yes, sir.
15         Q.    And tell me about that.
16         A.    The vehicle in front of me was slowing down,
17   and I was going to attempt to get in the right-hand lane.
18   I had turned my signal on, but before I could look to see
19   in my blind spot, I heard a horn beep, so I took my turn
20   signal off and slowed down for the car in front of me.
21         Q.    Was that the car that ultimately turned out
22   to be the one driven by Ms. Sloan?
23         A.    No, sir.
24
25               MS. WHITE:  I'm sorry, which car are we
```

Hart
www.hartreporting.com
scheduling@hartreporting.com
Toll Free
(877) 907-4278
Case 4:18-cv-00049-JLK-RSB   Document 9-2   Filed 04/01/19   Page 4 of 17   Pageid#: 94

Deposition of Julie Norman
February 26, 2019

Page 8

1          talking about?

2

3     BY MR. PYLE:   (Continuing)

4          Q.     The car that beeped its horn that was in your

5     blind spot, did you ever identify that car?

6          A.     Oh, no, sir.  I do not know if that was her

7     or not.

8          Q.     Okay.  Do you know which car beeped its horn?

9          A.     No, I do not.

10          Q.     Did you at that time see the car that you

11     eventually came to realize was driven by the plaintiff?

12          A.     I did see her vehicle come up on the

13     right-hand side, yes.

14          Q.     Okay.  Was that the vehicle that was in the

15     blind spot at some point?

16          A.     I do not know.

17          Q.     Okay.  So you never identified what vehicle

18     was in the blind spot?

19          A.     No, sir.

20          Q.     Okay.  Tell me when you first recall seeing

21     Ms. Sloan's vehicle.

22          A.     I saw her vehicle off of the side of the road

23     on the right-hand side.  I saw her trying to correct her

24     car back onto the road, and that is when she collided with

25     my driver's side front panel.

Hart
www.hartreporting.com                    Toll Free
scheduling@hartreporting.com       (877) 907-4278
Case 4:18-cv-00049-JLK-RSB   Document 9-2   Filed 04/01/19   Page 5 of 17   Pageid#: 95

Deposition of Julie Norman
February 26, 2019

Page 9

```
1          Q.     Driver's side front panel?

2          A.     I'm sorry, the passenger's side front panel.

3          Q.     Okay.  Do you have any knowledge or

4    information about what caused her to go over to the right

5    side of the road?

6          A.     I do not.

7          Q.     Okay.  All right.  Do you believe there was

8    any contact between her car and your car?  Physical -- let

9    me rephrase that.

10               Prior to her coming from the right side of

11   the road into your passenger's side --

12         A.     Uh-huh.

13         Q.     -- were you aware of or have any knowledge of

14   any contact between her car and your car?

15         A.     No, sir.

16         Q.     When you signaled to turn and move into the

17   right lane, where was her car?

18         A.     I do not know.

19         Q.     Okay.  Did you begin to actually move your

20   vehicle?

21         A.     No, sir.

22         Q.     Okay.  So as far as you know, the -- simply

23   the act of turning on your signal light caused someone to

24   beep their horn?

25         A.     Correct.
```

𝓗art
www.hartreporting.com
scheduling@hartreporting.com
Toll Free
(877) 907-4278
Case 4:18-cv-00049-JLK-RSB   Document 9-2   Filed 04/01/19   Page 6 of 17   Pageid#: 96

Deposition of Julie Norman
February 26, 2019

Page 10

```
 1                 MS. WHITE:   Object to the form of the
 2        question.
 3
 4   BY MR. PYLE:   (Continuing)
 5        Q.    When you saw Ms. Sloan's vehicle to the -- go
 6   to the right side of the road, was it in front of you?
 7   Adjacent to you?   How would you describe that?
 8        A.    It was beside my car.
 9        Q.    Okay.   Immediately beside?
10        A.    Yes.
11        Q.    Okay.   Were there any vehicles, to your
12   knowledge, either immediately in front of or behind
13   Ms. Sloan?
14        A.    I do not know.
15        Q.    Was your car -- let me rephrase that.
16              Immediately prior to Ms. -- when you saw
17   Ms. Sloan's vehicle to the right side of the road, was
18   your car the closest in proximity to her that you are
19   aware of?
20        A.    I am not aware of where her car was prior to
21   me seeing her.
22        Q.    Okay.   Based on your experience as a driver
23   and what you saw unfold in front of you, do you have
24   any -- do you have a belief as to where -- whether or not
25   her car was the one that beeped its horn?
```

*Hart*

www.hartreporting.com
scheduling@hartreporting.com

Toll Free
(877) 907-4278

Case 4:18-cv-00049-JLK-RSB   Document 9-2   Filed 04/01/19   Page 7 of 17   Pageid#: 97

Deposition of Julie Norman
February 26, 2019

Page 11

1       A.      From my prior driving knowledge, I would

2   assume she was the one who beeped the horn, but I do not

3   know.

4       Q.      Okay.  Were you familiar with this road?

5       A.      Yes.

6       Q.      How often do you drive through there?

7       A.      I drove probably twice a month.

8       Q.      For how long?

9       A.      Forty minutes from Kernersville to Fieldale,

10  Virginia.

11      Q.      Is that where you worked?

12      A.      My in-laws live in Fieldale.

13      Q.      Okay.  What is your recollection of how

14  traffic was that day?

15      A.      It was steady traffic.  Not as heavy as I

16  have seen it before, but steady.

17      Q.      How would you describe the road and weather

18  conditions?

19      A.      It was sunny, hot, and dry roads.

20      Q.      Do you recall the position of the sun that

21  day as you were driving just before the accident?

22      A.      If you are driving south, it would be to the

23  left.

24      Q.      Do you know or recall if you were wearing

25  sunglasses?

*Hart*

www.hartreporting.com                    Toll Free
scheduling@hartreporting.com         (877) 907-4278
Case 4:18-cv-00049-JLK-RSB   Document 9-2   Filed 04/01/19   Page 8 of 17   Pageid#: 98

Deposition of Julie Norman
February 26, 2019

Page 12

1      A.      I was not.

2      Q.      Do you recall if your visor was down?

3      A.      Yes.

4      Q.      Was it down?

5      A.      Yes.

6      Q.      The place where the accident occurred, would

7   you describe it as being straight or on a curve?

8      A.      It is straight getting ready to go into a

9   curve.

10     Q.      And would it be flat or on a hill?

11     A.      Flat.

12     Q.      To your recollection was there anything going

13  on on the side of the road or near the accident scene that

14  was in any way distracting?

15     A.      No, sir.

16     Q.      No construction or another car pulled over,

17  anything like that?

18     A.      No, sir.

19     Q.      Were you coming from your in-laws that day?

20     A.      Yes, sir.

21     Q.      And where were you heading?

22     A.      Home to Kernersville.

23     Q.      Were you the only one in the car?

24     A.      Yes, sir.

25     Q.      Were you due home at a particular time?

Hart

www.hartreporting.com
scheduling@hartreporting.com

Toll Free
(877) 907-4278

Case 4:18-cv-00049-JLK-RSB   Document 9-2   Filed 04/01/19   Page 9 of 17   Pageid#: 99

Deposition of Julie Norman
February 26, 2019

Page 13

1    A.    No, sir.

2    Q.    Do you recall what the speed limit was there?

3    A.    Fifty-five.

4    Q.    And do you recall what your speed was?

5    A.    I was prior going 55, but with the car

6  slowing down in front of me, I was slowing my speed as

7  well.

8    Q.    The police officer wrote your speed as being

9  50 miles an hour.  Did you give him that information?

10   A.    No, sir.

11   Q.    Do you agree this accident occurred on June

12  9th of '17?

13   A.    Yes, sir.

14   Q.    Do you remember what time of day?

15   A.    Approximately 4:45, 5:00 o'clock.

16   Q.    Is it p.m.?

17   A.    Yes, sir.

18   Q.    Do you remember what day of the week it was?

19   A.    It was a Friday.

20   Q.    Prior to the date of this accident, had you

21  ever met Trooper Dillon before?

22   A.    No, sir.

23   Q.    Did you talk to Trooper Dillon at the scene

24  of the accident?

25   A.    Not that I'm aware of.

Hart
www.hartreporting.com
scheduling@hartreporting.com
Toll Free
(877) 907-4278
Case 4:18-cv-00049-JLK-RSB   Document 9-2   Filed 04/01/19   Page 10 of 17   Pageid#: 100

Deposition of Julie Norman
February 26, 2019

Page 14

1    Q.    Did you not talk to him?

2    A.    When I was in the ambulance there was a

3    trooper that came in and got my driver's license so they

4    could pull me up, but I have not given a statement to

5    anyone.

6    Q.    Did the trooper come to the hospital where

7    you went?

8    A.    No, sir.

9    Q.    What hospital did you go to?

10   A.    Morehead.

11   Q.    Did you talk to anyone at the scene?

12   A.    The ambulance driver and the gentleman that

13   helped me out of the car.

14   Q.    Do you know who that was?

15   A.    I do not.

16   Q.    Are you aware of anyone by name who was a

17   witness to the accident?

18   A.    No, sir.

19   Q.    The vehicle you were driving, was it a '08

20   Saturn?

21   A.    Correct.

22   Q.    Was it owned by you?

23   A.    Yes.

24   Q.    Was it the vehicle that you would regularly

25   drive at that time?

Hart
www.hartreporting.com
scheduling@hartreporting.com
Toll Free
(877) 907-4278
Case 4:18-cv-00049-JLK-RSB   Document 9-2   Filed 04/01/19   Page 11 of 17   Pageid#: 101

Deposition of Julie Norman
February 26, 2019

Page 15

```
1        A.    Yes, sir.

2        Q.    Were you familiar with how it operated?

3        A.    Yes, sir.

4        Q.    Had it had any maintenance issues that day or

5   in the days before the accident?

6        A.    No, sir.

7        Q.    Is that vehicle equipped with any side impact

8   warnings?

9        A.    No, sir.

10       Q.    Are you familiar with the lights inset in the

11  mirrors that light up if someone's next to you?

12       A.    Now I am, yes, sir.

13       Q.    Was it equipped with that?

14       A.    No, sir.

15       Q.    How long had you been driving that day at the

16  time the accident took place?

17       A.    I had driven home from work 5 minutes.  I had

18  driven to Fieldale 40 minutes.  And then leaving Fieldale

19  until the wreck.

20       Q.    What was the purpose of your visit to see

21  your in-laws?

22       A.    I was dropping my kids off with them for the

23  weekend.

24       Q.    Oh, okay.

25             Good thing they weren't in the car on the way
```

*Hart*
www.hartreporting.com
scheduling@hartreporting.com
Toll Free
(877) 907-4278
Case 4:18-cv-00049-JLK-RSB   Document 9-2   Filed 04/01/19   Page 12 of 17   Pageid#: 102

Deposition of Julie Norman
February 26, 2019

Page 16

1    back, though.

2         A.    Correct.

3         Q.    Had you had any alcoholic beverages while you

4    were at their house that day?

5         A.    No, sir.

6         Q.    Were you taking any prescription medications

7    at that time?

8         A.    No, sir.

9         Q.    Were you taking any over-the-counter

10   medications?

11        A.    No, sir.

12        Q.    So the only people or person you talked to at

13   the scene was the man who helped you out of the car and an

14   EMT?

15        A.    Correct.

16        Q.    Never spoke to Ms. Sloan?

17        A.    No, sir.

18        Q.    Did anyone come to the scene on your behalf

19   after the accident?

20        A.    My father-in-law.

21        Q.    What's his name?

22        A.    Bobby Norman.

23        Q.    Do you know if he talked to anyone at the

24   scene?

25        A.    I know he talked to an officer to make sure I

Hart
www.hartreporting.com
scheduling@hartreporting.com
Toll Free
(877) 907-4278
Case 4:18-cv-00049-JLK-RSB   Document 9-2   Filed 04/01/19   Page 13 of 17   Pageid#: 103

Deposition of Julie Norman
February 26, 2019

Page 17

1  had been released to be able to go to the hospital.

2      Q.      Were does Mr. Norman reside?

3      A.      116 Pruitt Drive.

4      Q.      P-R-U-I-T-T?

5      A.      Correct.

6              Fieldale, Virginia.

7      Q.      Is that in Henry County?

8      A.      Yes.

9      Q.      Do you know if your vehicle is equipped with

10 daytime running lights?

11     A.      Yes.

12     Q.      And were they on that day?

13     A.      Yes.

14     Q.      Were there any lights on Ms. Sloan's vehicle

15 that you recall?

16     A.      I do not recall.

17     Q.      Do you remember anything about the make or

18 model or color of the vehicle in the left lane that was

19 slowing down?

20     A.      No, I do not.

21     Q.      Were there any -- anything up on the

22 windshield of your car?

23     A.      No, sir.

24     Q.      Did you own a cell phone at that time?

25     A.      I did.

Hart
www.hartreporting.com
scheduling@hartreporting.com
Toll Free
(877) 907-4278
Case 4:18-cv-00049-JLK-RSB   Document 9-2   Filed 04/01/19   Page 14 of 17   Pageid#: 104

Page 18

1       Q.    And did you have it in the car with you?

2       A.    Yes, sir.

3       Q.    Were you using it?

4       A.    No, sir.

5       Q.    Do you recall the last time you used it prior

6 to the accident?

7       A.    Yes.  I had sent a text to one of my friends

8 when I was leaving my in-laws' house to let them know I

9 was leaving.

10      Q.    Who was your carrier at that time?

11      A.    AT&T.

12      Q.    And was the phone in your name?

13      A.    Yes.

14      Q.    Do you recall the number?

15      A.    ██████████

16      Q.    Were you eating or drinking or doing anything

17 else in the car?

18      A.    No, sir.

19      Q.    Listening to the radio?

20      A.    I was listening to the radio.

21      Q.    What lane were you in when your vehicle

22 collided -- or Ms. -- the plaintiff's vehicle collided

23 with yours?

24      A.    The left-hand lane.

25      Q.    What did your vehicle do at that moment of

*Hart*

Deposition of Julie Norman
February 26, 2019

Page 19

1    impact?

2         A.    At the moment of impact it started to turn to

3    the left.  I tried to get control of it so I wasn't

4    T-boned if there was anybody behind me.  And as soon as it

5    hit the shoulder, it flipped.

6         Q.    Do you have any estimate of Ms. Sloan's

7    vehicle?  I'm sorry, estimate of her speed?  I'm sorry.

8         A.    I do not.

9         Q.    Okay.  Did your vehicle have a valid

10   inspection sticker at the time?

11        A.    Yes, sir.

12        Q.    And did you have a valid driver's license?

13        A.    Yes, sir.

14        Q.    You said you wear contact lenses?

15        A.    Yes, sir.

16        Q.    Were you wearing them on the day of the

17   accident?

18        A.    Yes, sir.

19        Q.    Do they help you see distance or close up?

20        A.    Distance.

21        Q.    Sitting here today do you have any knowledge

22   as to what might have caused Ms. Sloan's vehicle to go to

23   the right?

24        A.    I do not.

25        Q.    Was your vehicle totaled?

Hart
www.hartreporting.com
scheduling@hartreporting.com
Toll Free
(877) 907-4278
Case 4:18-cv-00049-JLK-RSB   Document 9-2   Filed 04/01/19   Page 16 of 17   Pageid#: 106

Deposition of Julie Norman
February 26, 2019

Page 20

1      A.    Yes.

2      Q.    Did you observe Ms. Sloan get out of her

3  vehicle at all at the accident scene?

4      A.    No, sir.

5      Q.    Did your airbags deploy?

6      A.    No, sir.

7      Q.    Was it equipped with airbags?

8      A.    Yes, sir.

9      Q.    Have you taken any photographs of your

10  vehicle?

11      A.    I have not.

12      Q.    Okay.  Are you aware of anyone who did?

13      A.    My father-in-law did.

14      Q.    And have those been provided to your counsel?

15      A.    Yes, sir.

16      Q.    Have you ever made any diagrams of the

17  accident scene?

18      A.    No, sir.

19      Q.    Have you taken any photographs of the

20  accident scene?

21      A.    No, sir.

22      Q.    Please don't be offended by this.  I have to

23  ask.

24          Have you ever been convicted of a felony?

25      A.    I have not.

Hart
www.hartreporting.com                    Toll Free
scheduling@hartreporting.com        (877) 907-4278
Case 4:18-cv-00049-JLK-RSB   Document 9-2   Filed 04/01/19   Page 17 of 17   Pageid#: 107

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

JOYCE G. SLOAN,                          )
                                         )
            Plaintiff,                   )
                                         )
v.                                       )     Case No. 4:18-cv-00049
                                         )
JULIE AYERS NORMAN                       )
                                         )
            Defendant.                   )

## DECLARATION OF JULIE NORMAN

Pursuant to 28 U.S.C. § 1746, I declare the following:

1. My name is Julie Norman, I reside at 9105 Foxlair Drive, Kernersville NC 27284

2. On the day of the accident I was driving a Saturn Outlook, the attached photo is a true and accurate depiction of the vehicle after the accident.

3. I declare under penalty of perjury that the foregoing is true and correct in accordance with 28 U.S.C. § 1746.

Executed on March 29, 2019.

Julie Norman



IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

JOYCE G. SLOAN,                    )
                                   )
            Plaintiff,             )
                                   )
v.                                 )        Case No.  4:18-cv-00049
                                   )
JULIE AYERS NORMAN                 )
                                   )
            Defendant.             )

## DECLARATION OF MICHAEL DEATON

Pursuant to 28 U.S.C. § 1746, I declare the following:

1. My name is Michael Deaton, I currently reside at _1187 French Store Rd, Big_

2. I am employed as a car hauler and travel frequently for my job. _Danby, TN 38224_

3. On June 9, 2017 I was headed southbound on Route 220 in Henry County Virginia. On that date, I observed an accident that happened between a white Jeep Cherokee and a gray Saturn Outlook.

4. I was following approximately 200-300 feet behind the Jeep Cherokee and the Saturn Outlook. I was in the right lane.

5. The Saturn Outlook was in the left lane and the Cherokee was in the right lane. I observed the Cherokee run off onto the right shoulder and over-correct and come back into the road and hit the Saturn Outlook in the left lane. Both vehicles went into the median.

6. I do not know Julie Norman or Joyce Sloan.

7. I declare under penalty of perjury that the foregoing is true and correct in accordance with 28 U.S.C. § 1746.

Executed on _3/18 (Monday)_ , 2019.

_Michael G. Deaton_

Michael Deaton

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| JOYCE G. SLOAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  4:18-cv-00049 |
| | ) | |
| JULIE AYERS NORMAN | ) | |
| | ) | |
| Defendant. | ) | |

## DECLARATION OF CAROL ELIZABETH WOTRING

Pursuant to 28 U.S.C. § 1746, I declare the following:

1. My name is Carol Elizabeth Wotring, I currently reside at 1108 Mulberry Road, Martinsville, Virginia, 24112.

2. I am employed as an emergency room nurse.

3. On June 9, 2017, I was traveling northbound in the left lane on Route 220 in Henry County, Virginia.

4. I did not see the accident but did come upon it while it was occurring, observing that one vehicle was upside down on its top and the other was in midair in the median.

5. I did not know Julie Norman or Joyce Sloan prior to the accident.

7. I declare under penalty of perjury that the foregoing is true and correct in accordance with 28 U.S.C. § 1746.

Executed on _March 28_, 2019.

_Carol E. Wotring_
Carol Elizabeth Wotring